IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

MARCUS WILLIS,

    Plaintiff,

v.                                                    No. 05-2625 B

SHELBY COUNTY, TENNESSEE, et al.,

    Defendants.

_____

ORDER GRANTING MOTION OF DEFENDANTS SHELBY COUNTY,
TENNESSEE, MAYOR WHARTON, SHERIFF LUTTRELL, AND
CHIEF JAILER COLEMAN FOR SUMMARY JUDGMENT
_____

INTRODUCTION AND PROCEDURAL BACKGROUND

This lawsuit was brought by the Plaintiff, Marcus Willis ("Willis"), against various Defendants alleging, pursuant to 42 U.S.C. § 1983, violation of his civil rights. He also claims violation of the Tennessee Governmental Tort Liability Act ("TGTLA"), as well as state law claims of negligence. Before the Court is the motion of Defendants Shelby County, Tennessee (the "County"), Mayor Wharton, Sheriff Luttrell, and Chief Jailer Coleman to dismiss or in the alternative for summary judgment in accordance with Rules 12 and 56 of the Federal Rules of Civil Procedure.

FACTS

The Plaintiff has alleged the following in his complaint. On July 27, 2004, Willis became a pre-trial detainee of the Shelby County Jail ("SCJ"). (Compl. ¶ 14). The Plaintiff suffered from Type I diabetes, for which he was prescribed insulin, and he was also taking medication to "regulate his blood pressure and prevent swelling." (Id. ¶ 16).

During the period of the Plaintiff's incarceration, the County contracted with Correctional Medical Services, Inc. ("CMS") in order to provide medical services to inmates. (Id. ¶ 15). Defendant Katherine Merriweather, a Licensed Practical Nurse ("LPN") and agent of CMS, conducted a medical screening of Willis upon his entry into SCJ. (Id. ¶ 17). Merriweather's screening sheet indicated that the Plaintiff was an insulin dependent diabetic, suffering from hypertension. (Id.).

Despite the intake screening sheet, CMS misidentified Willis' medical condition as Type II diabetes. (Id. ¶ 18). As a result, CMS gave the Plaintiff a medication that should not be used for the treatment of Type I diabetes. (Id. ¶ 19). CMS further failed to provide Willis with any medication to prevent swelling.[1] (Id.).

The Plaintiff soon began experiencing swelling in his left foot, about which he complained to SCJ officers who told him to fill out a "sick call" form. (Id. ¶¶ 20-21). However, the SCJ officers took no further action to alert anyone from CMS about Willis' foot condition, despite the obvious swelling. (Id. ¶¶ 21-22).

Although the Plaintiff filled out many "sick call" forms, he was not seen by a CMS employee until August 12, 2004, when he was examined by Defendant Alaina Sample, a Registered Nurse and agent of CMS. (Id. ¶ 23). Willis told Sample that he had not been receiving his medication to prevent swelling. (Id.). She noticed the Plaintiff's condition but did not prescribe him any medication; rather, she referred Willis to a clinic for further evaluation. (Id.).

The Plaintiff's medical problem continued to deteriorate, causing him to fill out more "sick

---

[1]The Plaintiff alleges that on the other three occasions he was incarcerated at SJC, CMS correctly identified his diabetes as Type I and noted that he was to receive HCTZ "fluid pills." (Compl. ¶ 35).

call" forms. (Id. ¶ 24). On August 26, 2004, Defendant Vanessa Ann Davis, a Non-Physician Clinician, examined Willis' foot. (Id. ¶ 25). The Plaintiff told Davis that he had not been receiving his prescribed medications to prevent swelling. (Id. ¶ 26). Davis advised Willis that although his foot was swollen, it was not infected, and she gave him "one HCTZ pill, a diuretic, and told him that he would receive his fluid pills twice a day thereafter." (Id.). The Plaintiff never received the pills. (Id.).

On August 29, 2004, the Plaintiff became sick, began to vomit blood, and asked to see the doctor. (Id. ¶ 28). An SCJ officer told Willis that the nurse on duty said the doctor would not see him until the following morning. (Id.).

On the morning of August 30, 2004, a CMS nurse examined the Plaintiff, who "was short of breath and could not keep any food down." (Id. ¶ 29). The nurse left the room to speak with someone Willis believed to be a doctor, as a result of which the Plaintiff was transported to the hospital. (Id.). He never saw a physician during the period of his detention prior to his hospitalization. (Id.). As a result of his condition, the Plaintiff developed gangrene in his foot, ultimately requiring his left leg to be amputated below the knee. (Id. ¶¶ 30-34).

STANDARD OF REVIEW

Rule 12(b)(6) permits dismissal of a lawsuit for failure to state a claim upon which relief could be granted. See Fed. R. Civ. P. 12(b)(6). The Rule requires the Court to "construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief." Grindstaff v. Green, 133 F.3d 416, 421 (6th Cir. 1998). "The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which

he bases his claim." Conley v. Gibson, 355 U.S. 41, 47 (1957). However, "[t]o avoid dismissal under Rule 12(b)(6), a complaint must contain either direct or inferential allegations with respect to all the material elements of the claim." Wittstock v. Mark A. Van Sile, Inc., 330 F.3d 899, 902 (6th Cir. 2003).

In the instant case, the Defendants have attached the affidavit of Chief Jailer Coleman to their motion to dismiss. "If, on a motion . . .to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 . . . ." Fed. R. Civ. P. 12(b). Therefore, the Court will treat the Defendants' motion as one for summary judgment.

Rule 56( c) provides that a

> judgment . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); Canderm Pharmacal, Ltd. v. Elder Pharms., Inc., 862 F.2d 597, 601 (6th Cir. 1988). In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324, 106 S. Ct. at 2552. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts."

Matsushita Elec. Indus. Co., 475 U.S. at 586, 106 S. Ct. at 1356. These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 2512 (1986). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322, 106 S. Ct. at 2552. In this circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [his] asserted causes of action." Lord v. Saratoga Capital, Inc., 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir. 1989)). Finally, the "judge may not make credibility determinations or weigh the evidence." Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994).

## MERITS OF THE DISPOSITIVE MOTION AND ANALYSIS

A.   Federal Claims.

   1.   Section 1983 Generally.

Section 1983 imposes liability on any "person who, under color of any statute, ordinance, regulation, custom or usage, of any State" subjects another to "the deprivation of any rights, privileges, or immunities secured by the Constitution or laws." 42 U.S.C. § 1983. In order to prevail on such a claim, a section 1983 plaintiff must establish "(1) that there was the deprivation of a right secured by the Constitution and (2) that the deprivation was caused by a person acting under color of state law." Wittstock v. Mark A. Van Sile, Inc., 330 F.3d 899, 902 (6th Cir. 2003). "Section 1983 is not the source of any substantive right, but merely provides a method for

vindicating federal rights elsewhere conferred." Humes v. Gilless, 154 F. Supp. 2d 1353, 1357 (W.D. Tenn. 2001).

    2.    Official Capacity.

The individual Defendants contend that the Plaintiff's claims against them under section 1983 in their official capacity are subsumed by the allegations against the County.

Suits against public officers in their official capacity "are an alternative way of pleading an action against the entity for which the officers are employed." Dudley v. Eden, 49 F. Supp. 2d 581, 589 n.5 (N.D. Ohio 1999) (citing Kentucky v. Graham, 473 U.S. 159, 165, 105 S. Ct. 3099 (1985)). Therefore, the Plaintiff's claims against the Defendants in their official capacity are included within his claims against the County. Id.  As such, these official capacity claims against the individual Defendants are DISMISSED.

    3.    Individual Liability Under § 1983.

The individual Defendants seek dismissal of the Plaintiff's section 1983 claims against them in their individual capacities. They contend that they took no direct active participation in any event complained of by the Plaintiff and that therefore they cannot be held liable individually under Sixth Circuit precedent. The Plaintiff requests this Court to reserve ruling on this issue until he has the opportunity for further discovery.

An individual may be sued under § 1983 in either his official or individual capacity. Gean v. Hattaway, 330 F.3d 758, 765-67 (6th Cir. 2003). "A suit against an individual in his official capacity is the equivalent of a suit against the governmental entity." Matthews v. Jones, 35 F.3d 1046, 1049 (6th Cir. 1994) (citing Will v. Mich. Dep't of State Police, 491 U.S. 58, 68, 109 S. Ct. 2304, 2310-11 (1989)). Where an individual such as a chief of police is sued in his individual

6

capacity, liability of the supervisory official is appropriate only if "the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it, or at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." Leary v. Daeschner, 349 F.3d 888, 903 (6th Cir. 2003) (citations and internal quotation marks omitted). Liability "must be based on more than the right to control employees. Likewise, simple awareness of employees' misconduct does not lead to supervisor liability." Id. (internal citations and quotation marks omitted).

In this case, neither the Plaintiff's complaint nor his memorandum of law in opposition to this motion contain any specific factual allegation that the Mayor, Sheriff, or Chief Jailer even knew of the activities giving rise to the instant action, let alone a claim that they actively participated in or authorized the specific conduct of the CMS agents. As to his request for a delay in this ruling to take further discovery, Willis provides no indication as to what he anticipates uncovering as to these individuals' personal involvement. Based upon the legal authorities cited, the individual Defendants' motion for summary judgment as to the section 1983 individual capacity claims against them is GRANTED.

4. Municipal Liability Under § 1983.

Even assuming a constitutional violation has occurred, it does not necessarily follow that liability may properly be laid at the doorstep of the governmental entity. Local governments such as the County are considered "persons" for purposes of the second prong of the section 1983 showing.[2] Holloway v. Brush, 220 F.3d 767, 772 (6th Cir. 2000). Nonetheless, counties are not

---

[2] The Court notes the Plaintiff's Complaint fails to distinguish between the County and CMS regarding policy and custom and between the jailers and the CMS employees regarding deliberate indifference. In any event, the Court will analyze the allegations as if the allegations are separate

"liable for every misdeed of their employees and agents." Alkire v. Irving, 330 F.3d 802, 814-15 (6th Cir. 2003) (quoting Garner v. Memphis Police Dep't, 8 F.3d 358, 363 (6th Cir. 1993)). "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." Monell v. N.Y. City Dep't of Soc. Serv., 436 U.S. 658, 694, 98 S. Ct. 2018, 2037 (1978). Instead, the Supreme Court has held that "a plaintiff seeking to impose liability on a municipality under § 1983 [must] identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." Bd. of County Comm'rs of Bryan County, Okla. v. Brown, 520 U.S. 397, 403, 117 S. Ct. 1382, 1388 (1997) (citing Monell, 436 U.S. at 694, 98 S. Ct. at 2027; Pembaur v. City of Cincinnati, 475 U.S. 469, 480-81, 106 S. Ct. 1292, 1298-99 (1986); and City of Canton, Ohio v. Harris, 489 U.S. 378, 389, 109 S. Ct. 1197, 1205 (1989)). "[A]n act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." Brown, 520 U.S. at 404, 117 S. Ct. at 1388 (citing Monell, 436 U.S. at 690-91, 98 S. Ct. at 2035-36).

> A "custom" for purposes of Monell liability must be so permanent and well settled as to constitute a custom or usage with the force of law. In turn, the notion of "law" must include deeply embedded traditional ways of carrying out state policy. It must reflect a course of action deliberately chosen from among various alternatives. In short, a "custom" is a "legal institution" not memorialized by written

---

and distinct as to each entity and individual. Further, although the parties have not addressed the issue of the applicability of section 1983 to private sector entities such as CMS and its employees, Sixth Circuit precedent clearly establishes that CMS is treated as a municipality for purposes of section 1983. See Hicks v. Frey, 992 F.2d 1450, 1459 (6th Cir. 1993) (citing West v. Atkins, 487 U.S. 42, 54, 108 S. Ct. 2250, 2258 (1988)) ("It is clear that a private entity which contracts with the state to perform a traditional state function such as providing medical services to prison inmates may be sued under § 1983 as one acting 'under color of state law.'"); see also Street v. Corrections Corp. of Am., 102 F.3d 810, 818 (6th Cir. 1996) ("Monell [v. N.Y. City Dep't of Soc. Serv., 436 U.S. 658, 694, 98 S. Ct. 2018, 2037 (1978),] involved a municipal corporation, but every circuit to consider the issue has extended the holding to private corporations as well.").

8

law.

Doe v. Claiborne County, Tenn., 103 F.3d 495, 507-08 (6th Cir. 1996) (internal quotation marks and citations omitted).  A plaintiff must, in order to show a custom or policy, adduce specific facts in support of his claim.  Conclusory allegations will not lie.  Culberson v. Doan, 125 F. Supp. 2d 252, 263-64 (S.D. Ohio 2000).

It is not enough for a § 1983 plaintiff to identify conduct attributable to a municipality. Rather,

> [t]he plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the "moving force" behind the injury alleged.  That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

Brown, 520 U.S. at 404, 117 S. Ct. at 1388.  "[A] showing of simple or even heightened negligence will not suffice."  Culberson, 125 F. Supp. 2d at 263.  Thus, to recover, a plaintiff

> must show that his civil rights were violated pursuant to and as a direct result of the [municipality's] official policy or custom.  The burden in this regard requires a showing that the unconstitutional policy or custom existed, that the policy or custom was connected to the [municipality], and that the policy or custom caused his constitutional violation.

Napier v. Madison County, Ky., 238 F.3d 739, 743 (6th Cir. 2001) (internal citations omitted).  In a case alleging failure to train, a plaintiff must establish that the municipality's failure "in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants."  Ferguson v. Leiter, 220 F. Supp. 2d 875, 884 (N.D. Ohio 2002) (quoting Canton, 489 U.S. at 389, 109 S. Ct. 1197); Humes, 154 F. Supp. 2d at 1363.

The Plaintiff has alleged that the County had no policy or custom in place to ensure inmates

9

at SCJ were provided with proper medical treatment. He claims that if the County did have a policy or custom, then it failed to train and supervise CMS and its agents properly.

> A plaintiff may bring an action for inadequate police supervision under § 1983. Mere negligence is insufficient; the failure must be so gross that future . . . misconduct is substantially certain to result. Even when gross negligence is demonstrated, a strong causal link must be established between the inadequacies in the training and supervision and the specific wrongdoing which injured the plaintiff. More specifically, a plaintiff must show both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval to the offending subordinate[s] are present.

Cunningham v. Reid, 337 F. Supp. 2d 1064, 1076 (W.D. Tenn. 2004) (internal citations and quotation marks omitted). In this case, the Plaintiff has not alleged that the policymakers for the County had contemporaneous knowledge of the occurrences giving rise to this action. Nor has any evidence been proffered to suggest a "prior pattern of similar incidents."

Finally, the Plaintiff's claim of failure to train must also succumb to summary judgment. The "deliberate indifference" standard that must be met in establishing municipal liability based on a failure to train is a "stringent" one. See id. at 1077. "Inadequate training constitutes a municipal policy only if 'the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the municipality can reasonably be said to have been deliberately indifferent to the need.'" Id. (quoting Canton, 489 U.S. at 390, 109 S.Ct. 1197). "It is not sufficient merely to show that a particular officer [or officers] acted improperly or that better training would have enabled an officer to avoid the particular conduct causing injury." Id. at 1078 (citing Simmons v. City of Philadelphia, 947 F.2d 1042, 1059-70 (3d Cir. 1991), cert. denied, 503 U.S. 985, 112 S. Ct. 1671(1992)).

The Defendants have attached to their motion the affidavit of Chief Jailer Coleman, in which he avers that "Deputy Jailers are required to transmit each inmate's medical needs/requests to CMS in the form of "sick calls." The sick calls are written requests for medical attention. State and federal law prohibits Sheriff's Office personnel from having access to inmates' medical conditions/treatment." (Def.'s Mem. Supp. Mot. Summ. J., ex. 1). Chief Jailer Coleman also avers that "[i]t is the policy and practice of the Shelby County Sheriff's Office to respond promptly to the medical requests and needs of inmates. Sheriff's Office employees who fail to respond appropriately are subject to discipline and are aware that such conduct will not be tolerated." (Id.).

In this case, the Plaintiff has made conclusory allegations regarding the liability of the County. However, these conclusory allegations, absent specific facts to support the claim, are insufficient to survive summary judgment. Fed. R. Civ. P. 56; see supra at 3-5. The Plaintiff has presented nothing whatever to contravene the Defendants' proof that the Defendant officers and the CMS employees were adequately trained. Nor has he made any showing that the need for more or different training was so obvious as to constitute deliberate indifference.

Based on the Plaintiff's failure to establish municipal liability, summary judgment is GRANTED as to the County.

    5.    <u>State law claims.</u>

Having disposed of the Plaintiff's claims under federal law, the Court now turns to Willis' state law claims against these Defendants. The exercise by a district court of supplemental, or pendent, jurisdiction over state law claims is governed by title 28 section 1367 of the United States Code, which expressly permits the Court to decline the exercise of jurisdiction when it has dismissed all claims over which it has original jurisdiction. See 28 U.S.C. § 1367(c)(3). Absent any remaining

federal claims against the County, Mayor, Sheriff, or Chief Jailer, the Court, in its sound discretion, hereby dismisses without prejudice the Plaintiff's claims against these Defendants under state law. See Weeks v. Portage County Executive Offices, 235 F.3d 275, 279-80 (6th Cir. 2000) (stating that a district court's decision to decline to exercise supplemental jurisdiction lies within its sound discretion).

## CONCLUSION

For the reasons articulated herein, the motion of the Defendants for summary judgment as to the federal claims is GRANTED. The remaining state law claims are DISMISSED without prejudice.

IT IS SO ORDERED this 27th day of September, 2006.

                                          s/ J. DANIEL BREEN
                                          UNITED STATES DISTRICT JUDGE