IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

MARCUS WILLIS,

    Plaintiff,

v.                                                            No. 05-2625 B

SHELBY COUNTY, TENNESSEE, et al.,

    Defendants.

---

ORDER GRANTING IN PART AND DENYING IN PART MOTION OF
DEFENDANTS CORRECTIONAL MEDICAL SERVICES, INC., KATHERINE
MERRIWEATHER, AND ALAINA SAMPLE FOR SUMMARY JUDGMENT

---

INTRODUCTION AND PROCEDURAL BACKGROUND

This lawsuit was brought by the Plaintiff, Marcus Willis ("Willis"), against various Defendants alleging, pursuant to 42 U.S.C. § 1983, violation of his civil rights. He also alleges violations of the Tennessee Governmental Tort Liability Act ("TGTLA"), as well as claims of Tennessee common law negligence. Before the Court is the motion of Defendants Correctional Medical Services ("CMS"), Katherine Merriweather ("Merriweather"), and Alaina Sample ("Sample") to dismiss or in the alternative for summary judgment in accordance with Rules 12 and 56 of the Federal Rules of Civil Procedure.

FACTS

The Plaintiff has alleged the following in his complaint. On July 27, 2004, Willis became a pre-trial detainee of the Shelby County Jail ("SCJ"). (Compl. ¶ 14). The Plaintiff suffered from Type I diabetes, for which he was prescribed insulin, while also taking medication to "regulate his blood pressure and prevent swelling." (Id. ¶ 16).

During the period of the Plaintiff's incarceration, the County contracted with Correctional Medical Services, Inc. ("CMS") in order to provide medical services to inmates. (Id. ¶ 15). Defendant Katherine Merriweather, a Licensed Practical Nurse ("LPN") and agent of CMS, conducted a medical screening of Willis upon his entry into SCJ. (Id. ¶ 17). Her screening sheet indicated that the Plaintiff was an insulin dependent diabetic, suffering from hypertension. (Id.).

Despite the intake screening sheet, CMS misidentified Willis' medical condition as Type II diabetes. (Id. ¶ 18). As a result, CMS gave the Plaintiff a medication that should not have been used for the treatment of Type I diabetes. (Id. ¶ 19). The Defendants further failed to provide Willis with any medication to prevent swelling.[1] (Id.).

The Plaintiff soon began experiencing swelling in his left foot, about which he complained to SCJ officers who told him to fill out a "sick call" form. (Id. ¶¶ 20-21). However, the SCJ officers took no further action to alert anyone from CMS about Willis' condition, despite the obvious swelling. (Id. ¶¶ 21-22).

Although the Plaintiff filled out many "sick call" forms, he was not seen by a CMS employee until August 12, 2004, when he was examined by Defendant Alaina Sample, a Registered Nurse and also an agent of CMS. (Id. ¶ 23). Willis told Sample that he had not been receiving his medication to prevent swelling. (Id.). She noticed the Plaintiff's condition but did not prescribe him any medication; rather, she referred Willis to a clinic for further evaluation. (Id.).

---

[1] The Plaintiff alleges that on the other three occasions he was incarcerated at SJC, CMS correctly identified his diabetes as Type I and noted that he was to receive HCTZ "fluid pills." (Compl. ¶ 35).

The Plaintiff's medical problem continued to deteriorate, causing him to fill out more "sick call" forms. (Id. ¶ 24). On August 26, 2004, Defendant Vanessa Ann Davis, a Non-Physician Clinician, examined Willis' foot. (Id. ¶ 25). The Plaintiff told Davis that he had not been receiving his prescribed anti-swelling medications. (Id. ¶ 26). Davis told Willis that although his foot was swollen, it was not infected, and she gave him "one HCTZ pill, a diuretic, and told him that he would receive his fluid pills twice a day thereafter." (Id.). However, the Plaintiff never received the pills. (Id.).

On August 29, 2004, the Plaintiff became sick, began to vomit blood, and asked to see the doctor. (Id. ¶ 28). An SCJ officer told Willis that the nurse on duty said the doctor would not see him until the following morning. (Id.).

On the morning of August 30, 2004, a CMS nurse examined the Plaintiff, who "was short of breath and could not keep any food down." (Id. ¶ 29). The nurse left the room to speak with someone Willis believed to be a doctor, as a result of which the Plaintiff was transported to the hospital. (Id.). The Plaintiff claims he never saw a physician during the entire period of his detention prior to his hospitalization. (Id.). As a result of his condition, the Plaintiff developed gangrene in his foot, ultimately requiring his left leg to be amputated below the knee. (Id. ¶¶ 30-34).

STANDARD OF REVIEW

Rule 12(b)(6) permits dismissal of a lawsuit for failure to state a claim upon which relief could be granted. See Fed. R. Civ. P. 12(b)(6). The Rule requires the Court to "construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the

claims that would entitle relief." Grindstaff v. Green, 133 F.3d 416, 421 (6th Cir. 1998). "The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim." Conley v. Gibson, 355 U.S. 41, 47 (1957). However, "[t]o avoid dismissal under Rule 12(b)(6), a complaint must contain either direct or inferential allegations with respect to all the material elements of the claim." Wittstock v. Mark A. Van Sile, Inc., 330 F.3d 899, 902 (6th Cir. 2003).

In the instant case, the Defendants have attached the affidavit of Sample to their motion to dismiss. "If, on a motion . . . to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 . . . ." Fed. R. Civ. P. 12(b). Therefore, the Court will consider the Defendants' motion as one for summary judgment.

Rule 56( c) provides that a

> judgment . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); Canderm Pharmacal, Ltd. v. Elder Pharms., Inc., 862 F.2d 597, 601 (6th Cir. 1988). In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts

showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324, 106 S. Ct. at 2552. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., 475 U.S. at 586, 106 S. Ct. at 1356. These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 2512 (1986). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322, 106 S. Ct. at 2552. In this circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [his] asserted causes of action." Lord v. Saratoga Capital, Inc., 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir. 1989)). Finally, the "judge may not make credibility determinations or weigh the evidence." Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994).

MERITS OF THE DISPOSITIVE MOTION AND ANALYSIS

A.  Federal Claims.

    1.  Section 1983 Generally.

Section 1983 imposes liability on any "person who, under color of any statute, ordinance, regulation, custom or usage, of any State" subjects another to "the deprivation of any rights, privileges, or immunities secured by the Constitution or laws." 42 U.S.C. § 1983. In order to prevail on such a claim, a section 1983 plaintiff must establish "(1) that there was the deprivation of a right secured by the Constitution and (2) that the deprivation was caused by a person acting under color of state law." Wittstock v. Mark A. Van Sile, Inc., 330 F.3d 899,

902 (6th Cir. 2003). "Section 1983 is not the source of any substantive right, but merely provides a method for vindicating federal rights elsewhere conferred." Humes v. Gilless, 154 F. Supp. 2d 1353, 1357 (W.D. Tenn. 2001).

  2.  Municipal Liability Under § 1983.

  CMS contends that it should be dismissed from the present action because the Plaintiff has not sustained his burden of proving that any policy or custom of CMS resulted in his medical condition. Willis counters that his complaint and the affidavit of a medical doctor he submitted in response to this motion clearly establish the necessary requirements for alleging liability against CMS.

  Even assuming a constitutional violation has occurred, it does not necessarily follow that liability may properly be laid at the doorstep of a governmental entity, in the form of a private sector company like CMS.[2] Local governments such as the County, or by extension CMS, are considered "persons" for purposes of the second prong of the section 1983 showing. Holloway v. Brush, 220 F.3d 767, 772 (6th Cir. 2000). Nonetheless, counties are not "liable for every misdeed of their employees and agents." Alkire v. Irving, 330 F.3d 802, 814-15 (6th Cir. 2003) (quoting Garner v. Memphis Police Dep't, 8 F.3d 358, 363 (6th Cir. 1993)). "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or

---

[2] Although the respective parties have not addressed the issue of the applicability of section 1983 to private sector entities such as CMS and its employees, Sixth Circuit precedent clearly establishes that CMS is treated as a municipality for purposes of section 1983. See Hicks v. Frey, 992 F.2d 1450, 1459 (6th Cir. 1993) (citing West v. Atkins, 487 U.S. 42, 54, 108 S. Ct. 2250, 2258 (1988)) ("It is clear that a private entity which contracts with the state to perform a traditional state function such as providing medical services to prison inmates may be sued under § 1983 as one acting 'under color of state law.'"); see also Street v. Corrections Corp. of Am., 102 F.3d 810, 818 (6th Cir. 1996) ("Monell [v. N.Y. City Dep't of Soc. Serv., 436 U.S. 658, 694, 98 S. Ct. 2018, 2037 (1978),] involved a municipal corporation, but every circuit to consider the issue has extended the holding to private corporations as well.").

agents." Monell v. N.Y. City Dep't of Soc. Serv., 436 U.S. 658, 694, 98 S. Ct. 2018, 2037 (1978). Instead, the Supreme Court has held that "a plaintiff seeking to impose liability on a municipality under § 1983 [must] identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." Bd. of County Comm'rs of Bryan County, Okla. v. Brown, 520 U.S. 397, 403, 117 S. Ct. 1382, 1388 (1997) (citing Monell, 436 U.S. at 694, 98 S. Ct. at 2027; Pembaur v. City of Cincinnati, 475 U.S. 469, 480-81, 106 S. Ct. 1292, 1298-99 (1986); and City of Canton, Ohio v. Harris, 489 U.S. 378, 389, 109 S. Ct. 1197, 1205 (1989)). "[A]n act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." Brown, 520 U.S. at 404, 117 S. Ct. at 1388 (citing Monell, 436 U.S. at 690-91, 98 S. Ct. at 2035-36).

> A "custom" for purposes of Monell liability must be so permanent and well settled as to constitute a custom or usage with the force of law. In turn, the notion of "law" must include deeply embedded traditional ways of carrying out state policy. It must reflect a course of action deliberately chosen from among various alternatives. In short, a "custom" is a "legal institution" not memorialized by written law.

Doe v. Claiborne County, Tenn., 103 F.3d 495, 507-08 (6th Cir. 1996) (internal quotation marks and citations omitted). A plaintiff must, in order to show a custom or policy, adduce specific facts in support of his claim. Conclusory allegations will not lie. Culberson v. Doan, 125 F. Supp. 2d 252, 263-64 (S.D. Ohio 2000).

It is not enough for a section 1983 plaintiff to identify conduct attributable to a municipality. Rather,

> [t]he plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the "moving force" behind the

7

> injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

Brown, 520 U.S. at 404, 117 S. Ct. at 1388. "[A] showing of simple or even heightened negligence will not suffice." Culberson, 125 F. Supp. 2d at 263 (emphasis added). Thus, to recover, a plaintiff

> must show that his civil rights were violated pursuant to and as a direct result of the [municipality's] official policy or custom. The burden in this regard requires a showing that the unconstitutional policy or custom existed, that the policy or custom was connected to the [municipality], and that the policy or custom caused his constitutional violation.

Napier v. Madison County, Ky., 238 F.3d 739, 743 (6th Cir. 2001) (internal citations omitted). In a case alleging failure to train, a plaintiff must establish that the municipality's failure "in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants." Ferguson v. Leiter, 220 F. Supp. 2d 875, 884 (N.D. Ohio 2002) (quoting Canton, 489 U.S. at 389, 109 S. Ct. 1197); Humes, 154 F. Supp. 2d at 1363.

The Plaintiff has asserted that CMS had no policy or custom in place to ensure inmates at SCJ were provided with proper medical treatment. He claims that if the County or CMS did have a policy or custom, then they failed to train and supervise CMS and its agents properly.[3]

> A plaintiff may bring an action for inadequate [municipal] supervision under § 1983. Mere negligence is insufficient; the failure must be so gross that future . . . misconduct is substantially certain to result. Even when gross negligence is demonstrated, a strong causal link must be established between the inadequacies

---

[3]The Court notes the Plaintiff's Complaint fails to distinguish between the County and CMS regarding policy and custom and between the jailers and the CMS employees regarding deliberate indifference. In any event, the Court will analyze the allegations as if the allegations are separate and distinct as to each entity and individual.

> in the training and supervision and the specific wrongdoing which injured the plaintiff. More specifically, a plaintiff must show both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval to the offending subordinate[s] are present.

Cunningham v. Reid, 337 F. Supp. 2d 1064, 1076 (W.D. Tenn. 2004) (internal quotation marks and citations omitted).

CMS has attached the affidavit of Alaina Sample to its motion for summary judgment.[4] In her sworn statement, Sample states that she has "personal knowledge that Correctional Medical Services, Inc. has extensive policies to ensure the medical needs of inmates are appropriately addressed . . . ." On the other hand, the Plaintiff has not alleged either in his Complaint or through the affidavit he attached to his response any specific policy or custom of CMS that resulted in a failure to treat his medical condition which ultimately resulted in

---

[4]The Court notes that the Defendants have not included any portion of the affidavit within their statement of undisputed material facts as is required by the Local Rules of this district. Local Rule 7.2(d)(2) provides that

> [o]n every motion for summary judgment, in addition to citations to appropriate legal authorities, the proponent of the motion shall designate in the accompanying memorandum by serial numbering each material fact upon which the proponent relies in support of the motion and shall affix to the memorandum copies of the precise portions of the record relied upon as evidence of each material fact. If the proponent contends that the opponent of the motion cannot produce evidence to create a genuine issue of material fact, the proponent shall affix to the memorandum copies of the precise portions of the record relied upon as evidence of this assertion.

LR 7.2(d)(2), Local Rules of the U.S. Dist. Ct. for the W. Dist. of Tenn. However, the Court in its discretion will consider the affidavit of Sample.

amputation.[5] He has, however, made conclusory allegations concerning policy and custom, but such allegations are insufficient to withstand summary judgment. Culberson, 125 F. Supp. 2d at 263-64; supra at 3-5. Willis has also failed to present any evidence to suggest a "prior pattern of similar incidents."

Finally, the Plaintiff's claim of failure to train must also succumb to summary judgment. The "deliberate indifference" standard that must be met in establishing municipal liability based on a failure to train is a "stringent" one. See Reid, 337 F. Supp. 2d at 1077. "Inadequate training constitutes a municipal policy only if 'the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the municipality can reasonably be said to have been deliberately indifferent to the need.'" Id. (quoting Canton, 489 U.S. at 390, 109 S. Ct. 1197). "It is not sufficient merely to show that a particular officer [or officers] acted improperly or that better training would have enabled an officer to avoid the particular conduct causing injury." Id. at 1078 (citing Simmons v. City of Philadelphia, 947 F.2d 1042, 1059-70 (3d Cir. 1991), cert. denied, 503 U.S. 985, 112 S. Ct. 1671(1992)).

In response to the Defendants' motion for summary judgment and the Sample affidavit, the Plaintiff has presented no evidence showing that the need for more or different training was so obvious as to constitute deliberate indifference. See Reid, 337 F. Supp. 2d at 1077. Willis has, however, submitted the affidavit of James H. Shull, M.D. See supra at 9 n.5. Dr. Shull makes the conclusory statement that the Defendants failed to properly train and supervise,

---

[5]Willis attached to his response the affidavit of James H. Shull, M.D. In his affidavit, Dr. Shull opines that many of the Defendants breached the standard of care for the medical profession in Shelby County. Dr. Shull also concludes that certain Defendants, though he does specify, were guilty of gross negligence in failing to supervise and train properly.

which as previously noted, is simply not sufficient to withstand summary judgment. See Culberson, 125 F. Supp. 2d at 263-64, supra at 3-5.

Based on the Plaintiff's failure to establish municipal liability, summary judgment is GRANTED as to CMS.

3. Individual capacity under § 1983

Merriweather and Sample contend that the Plaintiff has failed to state a claim against them under section 1983 because they were not deliberately indifferent to his serious medical needs. Willis disagrees and claims the two nurses violated his Fourteenth Amendment rights[6] by acting with deliberate indifference in refusing to provide him with medication to prevent swelling.

Under the Eighth Amendment, state officials must provide for the "serious medical needs" of prisoners. Estelle v. Gamble, 429 U.S. 97, 104, 97 S. Ct. 285 (1976). An Eighth Amendment violation giving rise to a section 1983 action occurs when prison officials act with deliberate indifference to a prisoner's "serious medical needs." Id.; see also Napier v. Madison County, 238 F.3d 739, 742 (6th Cir. 2001). However, because the Plaintiff was a pretrial detainee, the Eighth Amendment does not apply to the facts of this case. In its stead, the

---

[4]Willis' Complaint also alleges violations of his Fourth and Eighth Amendment rights. However, in his response, Willis seems to concede that his action properly lies under the Fourteenth Amendment. In any event, the Court finds the Fourth Amendment inapplicable to facts of this case as the Plaintiff has not alleged that a person acting under color of state law unconstitutionally searched or seized him. See U.S. Const. amend IV; see also Groh v. Ramirez, 540 U.S. 551, 559, 124 S. Ct. 1284 (2004) (section1983 action based upon unconstitutional search); Claybrook v. Birchwell, 199 F.3d 150 (6th Cir. 2000) (section 1983 action based upon unconstitutional seizure). Further, the Eighth Amendment analysis asserted by the Plaintiff applies only to individuals after conviction. See Estelle v. Gamble, 429 U.S. 102, 103-04, 97 S. Ct. 285 (1976); Comstock v. McCrary, 273 F.3d 693, 702 (6th Cir. 2001); cf. Watkins v. City of Battle Creek, 273 F.3d 682, 685-86 (6th Cir. 2001). Therefore, the Court will address only the Plaintiff's Fourteenth Amendment claim under section 1983. See id.

11

Fourteenth Amendment affords detainees rights which are "analogous" to those of prisoners and thus controls the claims of Willis. <u>Watkins v. City of Battle Creek</u>, 273 F.3d 682, 685-86 (6th Cir. 2001).

In order to sustain an action for deliberate indifference to a detainee's serious medical needs, a plaintiff must satisfy two prongs: one objective, one subjective . <u>See</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 834, 114 S. Ct. 1970 (1994). "To satisfy the objective component, the plaintiff must allege that the medical need at issue is 'sufficiently serious.'" <u>Comstock v. McCrary</u>, 273 F.3d 693, 702 (6th Cir. 2001) (citing and quoting <u>Farmer</u>, 511 U.S. at 834, 114 S. Ct. 1970). "To satisfy the subjective component, the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." <u>Id.</u> (citing <u>Farmer</u>, 511 U.S. at 837, 114 S. Ct. 1970). This requires the official's knowledge to fall somewhere above negligence but below knowing on the mens rea scale. <u>See, e.g.</u>, <u>id.</u> at 703 (stating that an official's failure to act on a "significant risk that *he should have perceived but did not*" does not give rise to a section 1983 claim); <u>accord</u> <u>Watkins</u>, 273 F.3d at 686 ("If an officer fails to act in the face of an obvious risk of which he should have known <u>but did not</u>, the officer has not violated the Eighth or Fourteenth Amendments.") (emphasis added). However, a defendant will be liable under section 1983 if "'he merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist.'" <u>Comstock</u>, 273 F.3d at 703 (quoting <u>Farmer</u>, 511 U.S. at 843 n.8, 114 S. Ct. 1970).

    A..    The Objective Test

In a light most favorable to the Plaintiff, the evidence reflects that Willis' foot was sufficiently swollen that he could not properly wear his SCJ issued shoe. It also shows that the Plaintiff told the CMS employees that he was not receiving his medication to control the swelling. The Court therefore concludes that the swelling in the Plaintiff's foot was objectively recognizable as a serious medical condition. See Roberson v. Bradshaw, 198 F.3d 645, 648 (8th Cir. 1999) (stating that an inmate who complained about serious physical conditions from failure to treat diabetes did not need to submit verifying medical evidence to establish detrimental effects of alleged delay in treatment because conditions inmate described would have been obvious to layperson).

   B. The Subjective Test

The proof also indicates that Willis told Merriweather during his intake screening that he was receiving medication to prevent swelling. The Plaintiff later told Sample that although he was on medication to prevent swelling, he was not receiving it. Despite the swelling and Willis' statement that he was not receiving his medicine, Sample took no action to either investigate the Plaintiff's claim or ensure that he began receiving the medication. Further, Merriweather also made no effort to investigate the situation or determine if the inmate had received his medication. Under these facts, summary judgment is not appropriate because a trier of fact may well conclude that Merriweather and Sample "refused to verify underlying facts that [they] strongly suspected to be true, or declined to confirm inferences of risk that [they] strongly suspected to exist." Comstock, 273 F.3d at 703. Therefore, the motion for summary judgment as to Merriweather and Sample is DENIED.

  4. State law claims.

   A. CMS

Having disposed of the Plaintiff's claims under federal law against CMS, the Court now

13

turns to Willis' state law claims against this Defendant. The exercise by a district court of supplemental, or pendent, jurisdiction over state law claims is governed by title 28 section 1367 of the United States Code, which expressly permits the Court to decline the exercise of jurisdiction when it has dismissed all claims over which it has original jurisdiction. See 28 U.S.C. § 1367(c)(3). Absent any remaining federal claims against CMS, in its sound discretion, the Court hereby dismisses without prejudice the Plaintiff's claims against this Defendant under state law. See Weeks v. Portage County Executive Offices, 235 F.3d 275, 279-80 (6th Cir. 2000) (stating that a district court's decision to decline to exercise supplemental jurisdiction lies within its sound discretion).

        B.     Merriweather and Sample

Merriweather and Sample contend they are entitled to summary judgment on the Plaintiff's TGTLA and common law negligence claims against them. Willis disagrees.

The Court concludes that the Plaintiff's common law negligence claims against Merriweather and Sample are subsumed by his TGTLA claim. See § 29-20-205 (abrogating sovereign immunity for negligent acts or omissions of government employees). The Court finds that Willis' TGTLA claim should be adjudicated by the courts of Tennessee and therefore declines to extend pendent jurisdiction. See Tenn. Code Ann. § 29-20-307 (stating that TGTLA claims are within the exclusive original jurisdiction of the circuit courts of Tennessee); Gregory v. Shelby County, Tenn., 220 F.3d 433, 446 (6th Cir. 2000) ( stating that "the Tennessee legislature expressed a clear preference that TGTLA claims be handled by its own state courts" and that the "unequivocal preference of the Tennessee legislature is an exceptional circumstance for declining jurisdiction"). Thus, the Plaintiff's remaining state law claims against Merriweather and Sample are DISMISSED without prejudice.

## CONCLUSION

For the reasons articulated herein, the motion of CMS for summary judgment as to the federal claims against it is GRANTED; the remaining state law claims against CMS are also DISMISSED without prejudice. The motion of Merriweather and Sample for summary judgment as to the federal claims against them is DENIED. The remaining state law claims against Merriweather and Sample, however, are DISMISSED without prejudice.

IT IS SO ORDERED this 29th day of September, 2006.

                                            s/ J. DANIEL BREEN
                                            UNITED STATES DISTRICT JUDGE