IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

MARCUS WILLIS,

    Plaintiff,

v.                                                 No. 05-2625 B

SHELBY COUNTY, TENNESSEE, et al.,

    Defendants.
_____

ORDER GRANTING MOTION OF DEFENDANT KATHERINE MERRIWEATHER
FOR SUMMARY JUDGMENT AND DENYING MOTION OF DEFENDANT
ALAINA SAMPLE FOR SUMMARY JUDGMENT
_____

        This lawsuit was brought by the Plaintiff, Marcus Willis, against various Defendants alleging, pursuant to 42 U.S.C. § 1983, violations of his civil rights. He also seeks relief under the Tennessee Governmental Tort Liability Act ("TGTLA"), as well as for negligent acts by the Defendants under state common law. Before the Court are the motions of Defendants, Alaina Sample and Katherine Merriweather, for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Docket Entry ("D.E.") Nos. 35 & 36.) The Plaintiff has responded and these motions are now ripe for disposition. For the following reasons, the Court GRANTS Merriweather's dispositive motion but DENIES Sample's motion.

BACKGROUND

        On July 27, 2004, Willis became a pre-trial detainee of the Shelby County Jail ("SCJ"). (D.E. No. 1, Compl. ¶ 14.) The Plaintiff suffered from Type I diabetes, for which he was prescribed insulin, while also taking medication to "regulate his blood pressure and prevent swelling." (Id. ¶ 16.) During his incarceration, the County contracted with Defendant, Correctional Medical

Services, Inc.,[1] ("CMS") to provide medical services to prisoners. (Id. ¶ 15.) At some point during his stay at the jail, CMS misidentified Willis's medical condition as Type II diabetes. (Id. ¶ 18.) The Plaintiff alleges that he received the incorrect medications and that his complaints of swelling on the left foot were ignored. On August 29, 2004, the Plaintiff became sick, began to vomit blood, and asked to see the doctor. (Id. ¶ 28.) An SCJ officer told Willis that the nurse on duty said the doctor would not see him until the following morning. (Id.) On August 30, 2004, a CMS nurse examined the Plaintiff, who she described as "short of breath and [unable to] keep any food down." (Id. ¶ 29.) The nurse left the room to speak with someone Willis believed to be a doctor, as a result of which the Plaintiff was transported to the hospital. (Id.) He never saw a physician during the period of his detention prior to the hospitalization. (Id.) As a result of his condition, Willis developed gangrene in his foot, ultimately requiring amputation of a part of his left leg. (Id. ¶¶ 30-34.)

Both Sample and Merriweather were licensed practical nurses who worked at CMS at all times relevant to the claims brought by Willis. (D.E. Nos. 35 & 36, Defs.' Statement of Facts ¶ 1.) At issue in the pending motions are the roles the Defendant nurses played in administering care to the Plaintiff. Merriweather examined the Plaintiff at his medical intake screening. (D.E. No. 36, Def.'s Statement of Facts ¶ 3.) Willis concedes in his Complaint that she correctly noted on the screening sheet that the Plaintiff was an insulin dependent diabetic, suffering from hypertension, and that it was only later that CMS misidentified Willis's medical condition as Type II diabetes. (D.E.

---

[1] CMS was dismissed as a party Defendant by order of this Court entered September 29, 2006.

2

No. 1, Compl. ¶¶ 17-18.)[2] Merriweather contends that she gave him appropriate medication for his condition at his medical screening but did not see the Plaintiff for any subsequent health-related complaints. (D.E. No. 36, Def.'s Statement of Facts ¶¶ 5, 8.)

Sample's interaction with Willis occurred approximately two weeks after he arrived at the jail. The Plaintiff was experiencing swelling in his left foot and was told by prison officials to fill out a "sick call" form. (D.E. No. 1, Compl. ¶¶ 20-21.) Willis states in his affidavit that the swelling was so severe that he had to wear his shoe half-way off his foot. (D.E. No. 43 Ex. 2, Aff. of Pl. at 2.) On August 12, Willis was examined by Sample, who noted slight swelling of the left foot and an open sore on the right foot. (D.E. No. 36, Def.'s Statement of Facts ¶¶ 5-6.) This Defendant asserts that she never observed the Plaintiff's foot swell to the point where he could not wear shoes. (Id. ¶ 9.) According to Willis, Sample treated only his right foot and referred him to the clinic for further evaluation. (See D.E. No. 43 Ex. 2, Aff. of Pl., at 2.) The Plaintiff charges both individual Defendants with deliberate indifference towards his serious medical needs.

STANDARD OF REVIEW

Rule 56( c) provides that a

> judgment . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

---

[2] Curiously, the Plaintiff now charges that Merriweather wrongly filled out the screening sheet, and cites the affidavit of Dr. James H. Shull, M.D., who has reviewed Willis's medical file, for support. (D.E. No. 42, Pl's Statement of Facts ¶ 5.) Even Dr. Shull's affidavit, however, states that the Plaintiff's medical condition was properly documented on the screening sheet and not until August 9, 2004, did an unidentified CMS worker improperly document his condition, referring to it as "Diabetes Type II a/k/a Adult Onset Diabetes and Hypertension." (D.E. No. 42 Ex. 1, Aff. of Dr. James H. Shull, M.D., at 3.)

3

See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Canderm Pharmacal, Ltd. v. Elder Pharms., Inc., 862 F.2d 597, 601 (6th Cir. 1988). In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., 475 U.S. at 586. These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. In this circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [his] asserted causes of action." Lord v. Saratoga Capital, Inc., 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir. 1989)). Finally, the "judge may not make credibility determinations or weigh the evidence." Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994).

## ANALYSIS

Section 1983 imposes liability on any "person who, under color of any statute, ordinance, regulation, custom or usage, of any State" subjects another to "the deprivation of any rights, privileges, or immunities secured by the Constitution or laws." 42 U.S.C. § 1983. In order to

4

prevail on such a claim, a section 1983 plaintiff must establish "(1) that there was the deprivation of a right secured by the Constitution and (2) that the deprivation was caused by a person acting under color of state law." Wittstock v. Mark A. Van Sile, Inc., 330 F.3d 899, 902 (6th Cir. 2003). "Section 1983 is not the source of any substantive right, but merely provides a method for vindicating federal rights elsewhere conferred." Humes v. Gilless, 154 F. Supp. 2d 1353, 1357 (W.D. Tenn. 2001).

The Plaintiff's claim arises from the Eighth Amendment's requirement that state officials provide for the "serious medical needs" of prisoners. Estelle v. Gamble, 429 U.S. 97, 104 (1976). An Eighth Amendment violation giving rise to a section 1983 action occurs when prison officials act with deliberate indifference to such medical needs of those in custody. Id.; see also Napier v. Madison County, 238 F.3d 739, 742 (6th Cir. 2001). However, because the Plaintiff was a pretrial detainee, the Eighth Amendment does not apply. In its stead, the Fourteenth Amendment affords detainees rights which are "analogous" to those of prisoners and thus control the claims of Willis. Watkins v. City of Battle Creek, 273 F.3d 682, 685-86 (6th Cir. 2001).

In order to sustain an action for deliberate indifference to a detainee's serious medical needs, a plaintiff must satisfy two prongs: one objective, one subjective. See Farmer v. Brennan, 511 U.S. 825, 834 (1994). "To satisfy the objective component, the plaintiff must allege that the medical need at issue is 'sufficiently serious.'" Comstock v. McCrary, 273 F.3d 693, 702 (6th Cir. 2001) (citing and quoting Farmer, 511 U.S. at 834). "To satisfy the subjective component, the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." Id. (citing Farmer, 511 U.S. at 837). This requires the official's knowledge

5

to fall somewhere above negligence but below knowing on the mens rea scale. See, e.g., id. at 703 (stating that an official's failure to act on a "significant risk that *he should have perceived but did not*" does not give rise to a section 1983 claim); accord Watkins, 273 F.3d at 686 ("If an officer fails to act in the face of an obvious risk of which he should have known *but did not*, the officer has not violated the Eighth or Fourteenth Amendments.") (emphasis added). However, a defendant bears responsibility under section 1983 if "'he merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist.'" Comstock, 273 F.3d at 703 (quoting Farmer, 511 U.S. at 843 n.8).

    A.    Defendant Merriweather

Even assuming that the Plaintiff can establish the objective prong of his deliberate indifference claim against Nurse Merriweather, he cannot satisfy the subjective prong. The evidence reveals that this Defendant only interacted with Willis once: when she completed his screening form. (D.E. No. 36, Def.'s Statement of Facts ¶ 3.) As to that act, the Plaintiff has conceded that she filled out the form correctly. (D.E. No. 1, Compl. ¶¶ 17-18; D.E. No. 42 Ex. 1, Aff. of Dr. James H. Shull, M.D., at 3.) Willis has presented no proof suggesting that it was Merriweather who later incorrectly documented his condition on another form, an event that allegedly led to his receiving medication designed to treat Type II, rather than Type I, diabetes. (See D.E. No. 42 Ex. 1, Aff. of Dr. James H. Shull, M.D. & Ex. 2, Aff. of Pl.)[3] Furthermore, there is no evidence that Merriweather saw him after his foot allegedly began to swell or that she was aware of his later requests for medical attention. Based on these facts, the Court is unable to conclude that Merriweather may have been guilty of

---

[3] In fact, the Complaint states that the initials of the health care practitioner on the form that misidentified his condition are illegible. (D.E. No. 1, Compl. ¶ 18.)

negligence towards the Plaintiff, much less that she failed to act in the face of a serious medical risk of which she was aware. Thus, the Court grants Merriweather's motion for summary judgment as to both the Plaintiff's federal and state law claims.

  B. <u>Defendant Sample</u>

    1. <u>Objective Prong</u>

Viewed in the light most favorable to the Plaintiff, the evidence reveals that Willis's foot was swollen to such a degree that he was unable to wear one of the shoes issued to him by the jail. Several employees, including Sample, examined the Plaintiff's foot because of his complaints of swelling. As noted above, Willis's condition was sufficiently serious that it led to the amputation of his lower leg and foot. Therefore, the Court concludes that the swelling of the Plaintiff's foot was objectively recognizable as a serious medical condition. <u>See</u> <u>Roberson v. Bradshaw</u>, 198 F.3d 645, 648 (8th Cir.1999) (stating that an inmate who complained about serious physical conditions from failure to treat diabetes did not need to submit verifying medical evidence to establish detrimental effects of alleged delay in treatment because conditions inmate described would have been obvious to layperson).

    2. <u>Subjective Prong</u>

Willis's affidavit reflects that his foot was so enlarged by the time he saw Sample that he could not wear his shoe. (<u>See</u> D.E. No. 43 Ex. 2, Aff. of Pl., at 2.) This Defendant's sworn statement contradicts that of the Plaintiff, asserting that she noticed only slight swelling of his left foot and that he could wear his shoes. (D.E. No. 36, Def.'s Statement of Facts ¶¶ 5-6, 9.) These conflicting affidavits raise obvious factual disputes, which the Court cannot resolve at the summary judgment stage. If Willis's statement is true, a jury could conclude that Sample "subjectively perceived facts from which to infer substantial risk to the prisoner, that [she] did in fact draw the

7

inference, and that [she] then disregarded that risk." Comstock, 273 F.3d at 702 (citation omitted).

Willis also indicates that he complained to this Defendant that he was not receiving the correct medication and that she did nothing other than to refer him to the clinic for further evaluation. (See D.E. No. 43 Ex. 2, Aff. of Pl., at 2.) His appointment at the clinic was scheduled for August 26, 2004, two weeks after he saw Sample and less than a week before his lower leg was amputated. (Id. at 2-3.) The Defendant contends that because she cannot prescribe medications, she could not have given him the medicine he needed. (D.E. No. 35, Def.'s Statement of Facts ¶ 11.) Even if she could not have written a prescription, however, a jury could conclude she should have investigated his claims of misdiagnosis in light of his allegedly severely swollen foot. See Roberson, 198 F.3d at 648 (finding that summary judgment was wrongly granted to a deputy sheriff, when he ignored a diabetic inmate's repeated complaints that he was not receiving the medication or special diet he needed). Thus, a jury could find that Sample knowingly disregarded a substantial risk of serious harm to the Plaintiff.

## CONCLUSION

For the reasons articulated herein, the Court GRANTS Defendant Merriweather's motion for summary judgment and DENIES Defendant Sample's motion.

IT IS SO ORDERED this 31st day of March, 2008.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE