IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

| | | |
|---|---|---|
| MARCUS WILLIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05-2625-STA-tmp |
| | ) | |
| ALAINA SAMPLE, RN, | ) | |
| | ) | |
| Defendant. | ) | |

_____

**ORDER GRANTING DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT**
_____

Before the Court is Defendant Alaina Sample's Renewed Motion for Summary Judgment (D.E. # 70) filed on June 12, 2009. Plaintiff has responded in opposition to Defendant's Motion, and Defendant has filed a reply brief. For the reasons set forth below, the Motion is **GRANTED**.

**BACKGROUND**

This case was removed from the Circuit Court of Shelby County, Tennessee, on August 26, 2005. The only remaining claim left in this matter is Plaintiff Marcus Willis' section 1983 claim of deliberate indifference to a serious medical condition against Defendant Alaina Sample, RN.[1]

---

[1] Since its removal, the Court has dismissed Defendants Shelby County, Mayor AC Wharton, Sheriff Mark Luttrell, Chief Jailer Coleman, Correctional Medical Services, Inc., and Katherine Merriweather, LPN.

Defendant's first motion for summary judgment (D.E. #35) was denied by United States District Judge J. Daniel Breen on March 31, 2008. This matter was transferred to the undersigned for all further proceedings on May 21, 2008. Judge Breen concluded that questions of fact existed about Plaintiff's medical treatment and those questioned precluded summary judgment. Judge Breen summarized Plaintiff's allegations in his Order Denying Defendant Sample's Motion for Summary Judgment (D.E. # 58) as follows:

On July 27, 2004, Plaintiff became a pre-trial detainee of the Shelby County Jail. Plaintiff suffered from Type I diabetes, for which he was prescribed insulin, while also taking medication to "regulate his blood pressure and prevent swelling." During his incarceration, the County contracted with Defendant Correctional Medical Services, Inc. ("CMS") to provide medical services to prisoners. At some point during his stay at the jail, CMS misidentified Plaintiff's medical condition as Type II diabetes. Plaintiff alleges that he received the incorrect medications and that his complaints of swelling of his left foot were ignored. On August 29, 2004, the Plaintiff became sick, began to vomit blood, and asked to see the doctor. A jailer told Plaintiff that the doctor would not see him until the following morning. On August 30, 2004, a CMS nurse examined Plaintiff and described him as "short of breath and [unable to] keep any food down." The nurse left the room to speak with someone Plaintiff believed to be a doctor, as a result of which the Plaintiff was transported to the hospital. According to Plaintiff, he never saw a physician during the period of his detention prior to the hospitalization. As a result of his condition, Willis developed gangrene in his foot, ultimately requiring amputation of the lower part of his left leg below the knee.

Defendant was a licensed nurse who worked at CMS at all times relevant to the claims

brought by Plaintiff. According to the Complaint, Defendant treated Plaintiff on August 12, 2004, approximately two weeks after he arrived at the jail. Plaintiff was experiencing swelling in his left foot and was told by prison officials to fill out a "sick call" form. Plaintiff stated in an affidavit that the swelling was so severe that he could not put on his left shoe. Plaintiff was examined by Defendant who noted slight swelling of the left foot and an open sore on the right foot. Defendant asserts that she never observed Plaintiff's foot swell to the point where he could not wear shoes. According to the Complaint, Defendant treated only his right foot and referred him to the clinic for further evaluation. Plaintiff charges Defendant with deliberate indifference to his serious medical needs.

In his Order Denying Defendant Sample's Motion for Summary Judgment, Judge Breen concluded that the swelling of Plaintiff's foot was objectively recognizable as a serious medical condition due to Plaintiff's inability to wear a shoe and his complaints of swelling. Judge Breen ruled that there was a disputed material fact concerning the state of swelling in Plaintiff's left foot that precluded summary judgment. Judge Breen noted that Plaintiff further stated in his affidavit that he informed Defendant that he was not receiving his fluid medication. Rather than investigating and making sure that Plaintiff did receive his medicine, Defendant simply referred Plaintiff to a clinic for additional treatment. Thus, Judge Breen determined that a jury could find that Defendant had knowingly disregarded a substantial risk of serious harm to Plaintiff.

Now Defendant has renewed her Motion for Summary Judgment and bases it in part on facts drawn from Plaintiff's subsequent deposition testimony, which was given on December 30, 2008. As a result, Judge Breen did not have these facts in the record before him at the time of his March 2008 Order.

In her renewed Motion for Summary Judgment, Defendant has stated the following undisputed facts. At all times pertinent to this cause of action, Defendant was a registered nurse licensed to practice in the State of Tennessee and was employed by CMS as a nurse at the Criminal Justice Center ("CJC"), 201 Poplar Avenue, Memphis, Tennessee. Def.'s Statement of Undisputed Facts ¶ 1.

Plaintiff appeared for a sick call on August 12, 2004, for a problem he described on the Inmate Health Service Request form as being "swelling in his right foot" and was seen by Defendant. *Id*. at ¶ 2. During the same sick call, Plaintiff complained to Defendant of swelling in his left foot for the past two weeks but denied any pain. *Id*. at ¶ 3. Plaintiff's right foot was not swollen on August 12, 2004. *Id*. at ¶ 4. Defendant took Plaintiff's vital signs, which were normal. *Id*. at ¶ 5. Upon examining Plaintiff, Defendant noted slight swelling in Plaintiff's left foot when compared to the right foot. *Id*. Plaintiff's left foot was not tender to the touch, nor was it discolored. *Id*. Defendant did not note any erythema. *Id*. Defendant did observe an open sore area on Plaintiff's right foot. *Id*. Exercising her clinical judgment, Defendant referred Plaintiff to be seen the same day in the medical clinic for further evaluation by a physician and for additional treatment. *Id*. at ¶ 6. Plaintiff was seen by medical personnel at the medical clinic on the second floor of the CJC the same day. *Id*. at ¶ 7.

In his deposition Plaintiff has testified that he does not remember Defendant and would not recognize her today. *Id*. at ¶ 8. Furthermore, Plaintiff does not recall any conversations he might have had with Defendant while at the CJC. *Id*. at ¶ 9. Plaintiff does not have a specific recollection of his sick call examination from Defendant on August 12, 2004. *Id*. at ¶ 10. Plaintiff does not remember complaining to Defendant that he had had swelling in his left foot

4

for the previous two weeks. *Id*. at ¶ 11. Plaintiff does not recall informing Defendant during the examination that he had not been receiving the fluid pills prescribed by his primary care physician. *Id*. at ¶ 12.

Plaintiff has admitted that the information contained in his deposition testimony as well as the affidavit, which he offered in response to Defendant's first motion for summary judgment, were based on information contained in his medical records while at the CJC. *Id*. at ¶ 13. Plaintiff admittedly is not claiming that Defendant intentionally tried to hurt him or cause him harm or injure him. *Id*. at ¶ 16.

## **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56(c) provides that a

> judgment . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.[2]

In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party.[3] When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial."[4] It is not sufficient

---

[2] Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Canderm Pharmacal, Ltd. v. Elder Pharms, Inc.*, 862 F.2d 597, 601 (6th Cir. 1988).

[3] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[4] *Celotex*, 477 U.S. at 324.

"simply [to] show that there is some metaphysical doubt as to the material facts."[5] These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict.[6] When determining if summary judgment is appropriate, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-side that one party must prevail as a matter of law."[7]

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[8] In this Circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [her] asserted causes of action."[9] Finally, the "judge may not make credibility determinations or weigh the evidence."[10] Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if . . . there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."[11]

---

[5] *Matsushita*, 475 U.S. at 586.

[6] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

[7] *Id.* at 251-52 (1989).

[8] *Celotex*, 477 U.S. at 322.

[9] *Lord v. Saratoga Capital, Inc.*, 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)).

[10] *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994).

[11] Fed. R. Civ. P. 56(c); *see also Celotex*, 477 U.S. at 322 (1986).

## ANALYSIS

### I.  *Conflicts in Plaintiff's Testimony*

As an initial matter, the Court must evaluate which facts are truly not in dispute for purposes of this Motion.  In response to Defendant's Statement of Facts, Plaintiff has offered a "Statement of Disputed Facts."   The Court would note that Local Rule 7.2(d)(3) provides

> the opponent of a motion for summary judgment who disputes any of the material facts upon which the proponent has relied. . . shall respond to the proponent's numbered designations, using corresponding serial numbering, both in the response and by attaching to the response, the precise portions of the record relied upon to evidence the opponent's contention that the proponent's designate material facts are at issue.[12]

The Court finds that Plaintiff has failed to comply with the Local Rules and adequately dispute the material facts upon which Defendant has relied.  Plaintiff has not responded to Defendant's statement of facts and not used Defendant's corresponding numbering.  Instead Plaintiff has provided his own "Statement of Disputed Facts," which does cite to the record, and the same affidavit he submitted in response to Defendant's first motion for summary judgment.  This forces the Court to examine the record and determine which material facts are actually in dispute.  Therefore, Plaintiff's method is disfavored.

Nevertheless, the Court must endeavor to ascertain which of the facts presented by the parties are supported by the record.  In this case there appears to be conflicting assertions from Plaintiff himself.  On the one hand, Plaintiff produced an affidavit in support of his response in

---

[12] Local Rule 7.2(d)(3).

opposition to Defendant's first motion for summary judgment.[13] It is clear that Judge Breen relied on several of the averments in the affidavit in concluding that there were questions of fact that precluded summary judgment for Defendant at that time. Plaintiff has filed the same affidavit as an exhibit to his response to the Motion now before the Court. In this declaration, Plaintiff stated that his left foot swelled so much that he could not wear his prison-issued shoe.[14] Plaintiff also averred that he told Defendant about not receiving the fluid pills prescribed by his primary care physician.[15] Plaintiff stated that Defendant did nothing other than refer him to the clinic, yet he was not seen there until two weeks later on August 26, 2004. Relying on these assertions, Judge Breen ruled that Plaintiff had adduced evidence from which a reasonable juror could conclude that Defendant had acted with deliberate indifference to his serious medical needs.

Subsequent to Judge Breen's ruling denying summary judgment, Plaintiff was deposed on December 30, 2008. Based on the excerpts Defendant has provided in support of the Motion now before the Court, Plaintiff was able to give considerably less detail concerning his encounter with Defendant. In contrast to his affidavit, Plaintiff testified that he did not recall the conversation he had with Defendant during the sick call examination on August 12, 2004. Plaintiff did not remember complaining to Defendant of swelling in his left foot for the previous two weeks. Plaintiff actually testified that the swelling in his left foot started two to three weeks after July 27, 2004, the date on which he was brought to the CJC. Most importantly, Plaintiff

---

[13] Pl.'s Resp. to Def.'s Mot. Summ. J., Mar. 19, 2007

[14] Pl.'s Resp. to Def.'s Renewed Mot. Summ. J., ex. 2.

[15] *Id*.

8

could not even remember if Defendant was the person he informed about not receiving the fluid pills prescribed by his primary care physician. Plaintiff did confirm that after Defendant examined him, he was taken to the diabetic clinic although it is not clear when Plaintiff believes that occurred. Plaintiff further admitted that the information contained in his affidavit was based on information contained in his CJC medical records.

The Court finds that Plaintiff's deposition testimony differs significantly from his earlier affidavit. It is undisputed that Plaintiff saw Defendant only one time while at the CJC, on August 12, 2004. However, Plaintiff does not remember if he complained about swelling in his left foot to Defendant. In fact, according to Plaintiff, his left foot only began to swell two to three weeks after he was brought to the CJC, meaning he first noticed the swelling between August 10 and August 17. Plaintiff cannot confirm that Defendant was on notice that he was not receiving his fluid medication as prescribed. In denying summary judgment before, Judge Breen accepted Plaintiff's affidavit and concluded that all of the facts averred therein should have put Defendant on notice of Plaintiff's serious medical condition. However, it appears that Plaintiff cannot actually recall these same facts.

A party cannot create a genuine issue of material fact for purposes of summary judgment by presenting an affidavit that contradicts deposition testimony.[16] Accordingly, a plaintiff cannot create a factual issue by contradicting testimony given in his deposition.[17] This rule is "grounded on the sound proposition that a party should not be able to create a disputed issue of material fact

---

[16] *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999); *Penny v. UPS*, 128 F.3d 408, 415 (6th Cir. 1997); *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986).

[17] *Lanier v. Bryant*, 332 F.3d 999, 1004 (6th Cir. 2003).

where earlier testimony on that issue by the same party indicates that no such dispute exists."[18] Statements which a plaintiff has knowledge of must be made in the plaintiff's deposition, when questioned on the subject; thus, if a specific statement was made in a conversation that the deponent was questioned on, the deponent "was required to bring it out at the deposition and could not contradict [his] deposition testimony in a subsequent affidavit."[19] Conversely, an affidavit may be used to provide information that the questioner failed to inquire about; thus, it has been allowed where "[the deponent] was not expressly asked what [a named individual] said to [the deponent] during that conversation."[20] A reviewing court must first determine whether a post-deposition affidavit submitted at the summary judgment stage directly contradicts the non-moving party's prior sworn testimony; if so, the affidavit should be stricken.[21]

The Court holds that Plaintiff's affidavit in support of this Motion does conflict with his deposition testimony, and so the affidavit should be disregarded. The clear rule is that where a nonmoving party attempts to offer an affidavit that contradicts other statements made by the party during a deposition, then the Court must disregard the affidavit. Plaintiff has offered no explanation for the troubling inconsistencies in the affidavit and deposition testimony. In fact, Plaintiff has admitted that his affidavit was based on a review of his medical records.

The Court finds this explanation unavailing for two reasons. First, Plaintiff argues in response to the instant Motion that Defendant's written report of her August 12, 2004 treatment

---

[18] *Aerel v. PCC Airfoils*, 448 F.3d 899, 907 (6th Cir. 2006).

[19] *Reid*, 790 F.3d at 459.

[20] *Briggs v. Potter*, 463 F.3d 507, 513-14 (6th Cir. 2006).

[21] *Aerel*, 448 F.3d at 908.

10

of Plaintiff is "the only document in the record containing (sic) participation in this matter."[22]  A review of those notes offers no support for Plaintiff's contentions about his treatment from Defendant.  Second, Plaintiff has not provided the CMS medical records or pointed to the precise portions of the records which would support the facts averred in his affidavit.  Because the records were provided as an attachment to another motion in this matter,[23] the Court was able to review them independently and finds no support for the material facts Plaintiff has averred.  In particular, there is no evidence in the medical records of his complaints about swelling in his left foot, his inability to wear his left shoe, and his report to Defendant that he was not receiving his proper medication.

Not only do the medical records contain no evidence of Plaintiff's complaints to this Defendant specifically, the same records undermine Plaintiff's case against this Defendant.  There is no evidence of Plaintiff's multiple reports about swelling in his foot prior to his transport to the hospital on August 30, 2004 for emergency treatment.[24]  Plaintiff's physical assessment signed by Dr. Gerald Stipanuk on August 9, 2004, three days before Defendant examined Plaintiff, indicates no pedal edema (foot swelling).  Plaintiff has argued that but for Defendant's deliberate indifference on August 12, he would have received the treatment he needed much sooner and perhaps avoided the amputation of his lower left leg.  However, Defendant asserts that Plaintiff was seen by a physician at the clinic on August 12, 2004.  The records also show that Plaintiff was treated in the CJC Diabetic Chronic Care Center on August

---

[22] Pl.'s Resp. 2, Jul. 13, 2009.

[23] *See* Pl.'s Resp. to Defs.' Mot. to Dismiss, ex. 4, Mar. 22, 2006.

[24] *Id.* at 93.

11

26, 2004, by another provider who conducted a foot exam as well as a microfilament test of both Plaintiff's left and right feet.[25] While the record indicates there was some edema, there is nothing in the records from that visit to indicate Plaintiff's left foot was unusually or dangerously swollen.[26] Even when Plaintiff became ill on August 30, the CMS staff had him sent for emergency care because he could not keep food down and had been hospitalized for the same symptoms in December 2003.[27] Therefore, the Court finds that there exists evidence in the medical records which is material to Plaintiff's claims and otherwise undisputed.

Having determined that Plaintiff's affidavit contradicted his actual testimony and was not supported by the medical records on which it purported to rely, the Court holds that Plaintiff's affidavit must be stricken.

## II.     Fourteenth Amendment Claim

Section 1983 imposes liability on any "person who, under color of any statute, ordinance, regulation, custom or usage, of any State" subjects another to "the deprivation of any rights, privileges, or immunities secured by the Constitution or laws."[28] In order to prevail on such a claim, a section 1983 plaintiff must establish "(1) that there was the deprivation of a right secured by the Constitution and (2) that the deprivation was caused by a person acting under

---

[25] *Id*. at 85.

[26] *Id*. at 84.

[27] *Id*. at 57.

[28] 42 U.S.C. § 1983.

color of state law."[29]  "Section 1983 is not the source of any substantive right, but merely provides a method for vindicating federal rights elsewhere conferred."[30]

Plaintiff's claim arises from the Eighth Amendment's requirement that state officials provide for the "serious medical needs" of prisoners.[31]  An Eighth Amendment violation giving rise to a section 1983 action occurs when prison officials act with deliberate indifference to such medical needs of those in custody.[32]  However, because the Plaintiff was a pretrial detainee, the Eighth Amendment does not apply.  Instead, the Fourteenth Amendment affords detainees rights which are "analogous" to those of prisoners and thus control Plaintiff's claims.[33]

In order to sustain an action for deliberate indifference to a detainee's serious medical needs, a plaintiff must make both an objective and subjective showing.[34]  "To satisfy the objective component, the plaintiff must allege that the medical need at issue is 'sufficiently serious.'"[35]  "To satisfy the subjective component, the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then

---

[29] *Wittstock v. Mark A. Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003).

[30] *Humes v. Gilless*, 154 F. Supp. 2d 1353, 1357 (W.D. Tenn. 2001).

[31] *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

[32] *Id. See also Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001).

[33] *Watkins v. City of Battle Creek*, 273 F.3d 682, 685-86 (6th Cir. 2001).

[34] *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

[35] *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001) (citing and quoting *Farmer*, 511 U.S. at 834).

disregarded that risk."[36] This requires the official's knowledge to fall somewhere above negligence but below knowing on the *mens rea* scale.[37] However, a defendant bears responsibility under section 1983 if "'he merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist.'"[38] A prison official's mental state must rise to "deliberateness tantamount to intent to punish."[39]

With respect to claims of indifference to a serious medical need, a claim against a health care provider for negligence in treating a medical condition does not rise to a violation of the Eighth Amendment.[40] A negligent misapprehension about the severity of a condition, for example, will not create a section 1983 claim.[41] In other words, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner."[42] Perhaps most importantly, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical

---

[36] *Comstock*, 273 F.3d at 702.

[37] *See, e.g., id*. at 703 (stating that an official's failure to act on a "significant risk that *he should have perceived but did not*" does not give rise to a section 1983 claim); *accord Watkins*, 273 F.3d at 686 ("If an officer fails to act in the face of an obvious risk of which he should have known *but did not*, the officer has not violated the Eighth or Fourteenth Amendments.") (emphasis added).

[38] *Comstock*, 273 F.3d at 703 (quoting Farmer, 511 U.S. at 843 n. 8).

[39] *Horn v. Madison County Fiscal Court,* 22 F.3d 653, 660 (6th Cir. 1994).

[40] *Estelle*, 429 U.S. at 105-106.

[41] *Barnett v. Luttrell*, 2008 WL 4527975, *11 (W.D. Tenn. 2008).

[42] *Estelle*, 429 U.S. at 105-106. *See also Sanderfer v. Nichols*, 62 F.3d 151, 154 (6th Cir. 1995).

judgments and to constitutionalize claims which sound in state tort law."[43]

Applying these principles to the facts presented in this case, the Court holds that Plaintiff cannot establish his claim for violation of his constitutional rights as to this Defendant. There is no credible evidence to suggest that Plaintiff's foot was so swollen on August 12, 2004, that it should have been recognizable to Defendant that Plaintiff was suffering from a serious health condition. It is undisputed that Plaintiff did complain about swelling in his foot. The record of his examination, however, indicates that Plaintiff's left foot was only slightly more swollen than his right foot. Plaintiff has presented no evidence that he informed Defendant on August 12 that his left foot was so swollen that he could not wear his shoe. Plaintiff testified in his deposition that he could not remember his conversation with Defendant, what complaints he presented or whether it was even this Defendant that he informed that he was not receiving his correct medication. Even though the medical records were not included as part of the record on summary judgment, the Court finds that they contain no evidence from which a reasonable juror could conclude that Defendant subjectively perceived facts from which to infer substantial risk to Plaintiff on August 12, 2004.   Furthermore, Plaintiff was seen on August 26, 2004 at CJC Diabetic Chronic Care at which time both feet were examined and tested. That examination presented no other evidence that Plaintiff's condition was so serious that immediate treatment was needed. It could hardly be said then that Defendant was deliberately indifferent on August 12 when an exam two weeks later revealed no imminent serious health problems posed by the condition of Plaintiff's feet. Therefore, the Court holds that Plaintiff cannot make his section

---

[43] *Westlake v. Lucas,* 537 F.2d 857, 860 n. 5 (6th Cir.1976). *See also Sanderfer*, 62 F.3d at 155 (no section 1983 claim where prisoner received treatment and "harm ultimately was not averted").

1983 claim against this Defendant.

In the alternative, even if Defendant failed to observe the standard of care in this case, such negligence does not rise to the level of deliberate indifference. Defendant's misapprehension about the severity of Plaintiff's foot swelling does not create a section 1983 claim. It is undisputed that Plaintiff received treatment and the record shows that Plaintiff's feet were examined. Defendant's treatment notes indicate that she referred Plaintiff to a diabetic chronic care at the CJC for further evaluation that same day.[44] The dispute in this case then is over the adequacy of Plaintiff's treatment. Under the circumstances, this Court is "reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." Therefore, Defendant is entitled to summary judgment.

## CONCLUSION

Plaintiff has adduced no evidence from which a reasonable juror could conclude that Defendant was deliberately indifferent to a serious health condition during her single examination of Plaintiff. There is no evidence that Defendant subjectively perceived facts from which to infer substantial risk to Plaintiff, that she did in fact draw the inference, and that she then disregarded that risk to Plaintiff. In short it cannot be said that Defendant caused a deprivation of Plaintiff's constitutional rights. Therefore, Defendant is entitled to summary judgment.

**IT IS SO ORDERED.**

                              **s/ S. Thomas Anderson**
                              S. THOMAS ANDERSON

---

[44] Def.'s Mot. Summ. J., ex. A.

UNITED STATES DISTRICT JUDGE

Date: August 5th, 2009.